UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHARON ROGERS,<br><br>   Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>   Defendant. | No.  CV 05-6853-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

  Plaintiff filed this action on September 21, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 17, 2005.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 13, 2006, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 14, 1953. [See Administrative Record ("AR") at 78.] She has a high school education, some college, and past work experience as an attendant and companion. [AR at 20, 39, 90.]

On November 30, 1998, plaintiff protectively filed an application for Supplemental Security Income payments, alleging disability due to a mental disability, and pain in her left leg and lower back. [AR at 20, 78, 89.] She claimed she has been unable to work since January 15, 1998. [AR at 20, 78.] After her application was denied initially and on reconsideration, plaintiff was afforded a hearing before an Administrative Law Judge ("ALJ") on June 11, 2002. After the hearing and a review of the record, the ALJ found that plaintiff does not suffer from a severe impairment or impairments, and therefore is not disabled. [AR at 19-23.] On June 18, 2003, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. [AR at 5-7.] Plaintiff then appealed that decision to the United States District Court.  On April 28, 2004, the matter was remanded by this Court to the Commissioner for consideration of the mental health evidence from West Central Mental Health Service. [AR at 378-89.] On April 13, 2005, a supplemental hearing was held,[1] at which plaintiff appeared with counsel.  Testimony was received from a vocational expert and two medical experts. [AR at 423-60.] On July 19, 2005, the ALJ concluded that although plaintiff cannot perform her past relevant work [AR at 370], she is capable of performing a significant range of heavy work,[2] and that "she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." [AR at 371-72.] Accordingly, the ALJ found plaintiff not disabled. [AR at 372-73.]

---

[1] At the April 13, 2005, hearing, plaintiff amended her onset date to a closed period from December 19, 1998, through March 1, 2004. [AR at 366.]

[2] Heavy work is defined as work involving "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d) and 416.967(d).

2

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

1  claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in
2  substantial gainful activity, the second step requires the Commissioner to determine whether the
3  claimant has a "severe" impairment or combination of impairments significantly limiting her ability
4  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
5  If the claimant has a "severe" impairment or combination of impairments, the third step requires
6  the Commissioner to determine whether the impairment or combination of impairments meets or
7  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
8  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.
9  If the claimant's impairment or combination of impairments does not meet or equal an impairment
10 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
11 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
12 and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform
13 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
14 case of disability is established. The Commissioner then bears the burden of establishing that
15 the claimant is not disabled, because she can perform other substantial gainful work available in
16 the national economy. The determination of this issue comprises the fifth and final step in the
17 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
18 F.2d at 1257.

### B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

Applying the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 367.] At steps two and three, the ALJ concluded that plaintiff has a severe impairment consisting of "a history of treatment for depression and anxiety," but that the impairment does not meet or equal any impairment in the Listing. [AR at 369.] At steps four and five, the ALJ concluded that plaintiff
/
/
/

4

is not able to perform her past relevant work, but has the residual functional capacity ("RFC")[3] to perform work at any exertional level "as long as she performs simple, repetitive work tasks." [AR at 370.]  He then found that a significant number of jobs exist in the national economy that plaintiff can perform.  Accordingly, the ALJ found plaintiff not disabled. [AR at 366-73.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to (1) properly assess the opinions of plaintiff's mental health professionals; and (2) properly evaluate plaintiff's credibility.  For the reasons explained below, the Court agrees with plaintiff, and remands this matter for further proceedings.

### A.   THE EVIDENCE

As relevant to the issues presented herein, and as related by the Court in its April 28, 2004, remand Order, progress notes from West Central Mental Health Service ("West Central") demonstrate that on November 16, 1996, plaintiff was assessed as having a Global Assessment of Functioning ("GAF") score of 25.[4] [AR at 344.] On July 25, 2002, plaintiff was re-assessed by a physician at West Central as having a GAF score of 38[5] (based on an assessment from March, 2000). [AR at 326.] The notes also reflect that plaintiff periodically received treatment from some

---

[3]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000).  A Global Assessment of Functioning score of 21-30 denotes "[b]ehavior [that] is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." See DSM-IV, at 34.

[5]   A Global Assessment of Functioning score of 31-40 denotes "[s]ome impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." See DSM-IV, at 34.

5

time in 2000 through May, 2002 -- attending at least one dozen treatment sessions -- and displayed symptoms of depression for which she was prescribed and sought refills of medication. [AR at 319-60.]

Dr. Julian Kivowitz tested at the hearing that, based on his review of the medical records, plaintiff does not meet a listing arising from her mental impairment. [AR at 431-32.] He rejected a prior medical opinion that plaintiff would be able to work "in all respects," however [AR at 432; see AR at 293], instead finding that she had limitations. [AR at 432.] He testified that the Global Assessment of Functioning score of 25 assessed at West Central is "self contained," i.e., "it is supported by its record," but he noted that it was an initial assessment. Some of the accompanying progress notes "go along" with that assessment, and many do not, but it was a "reasonable opinion" as to plaintiff's initial assessment. [AR at 433-34.] His statements hold true for the subsequent GAF rating of 38 as well. [AR at 434.] He concluded that plaintiff has slight limitations in her activities of daily living, moderate social limitations, her concentration would be moderately impaired, and she would have a significant impairment in interacting with co-workers and supervisors which would affect her ability to hold a job, but would not preclude it. [AR at 434-37.] He believed that plaintiff could do repetitive work that is simple. [AR at 435.]

The ALJ reviewed the records from West Central dated November, 1996, through July, 2002. He noted that plaintiff's treatment began in November, 1996, and continued through 1997, at which time it stopped but began again in 2000 and lasted through 2002. Plaintiff was initially assessed with a GAF score of 25, which the ALJ points out indicates that plaintiff's behavior was "influenced by delusions and hallucinations or serious impairment in communication or judgment or an inability to function in almost all areas." He goes on to note that by December, 1996, plaintiff was described as having mild depression and very good compliance with medication, compliance that continued through the first part of 1997. In April, 1997, plaintiff was agitated and hostile, but her therapist was able to calm her down. By late 1997, plaintiff skipped appointments saying that she was no longer depressed and was doing fine. The ALJ then notes that in January, 1998, there had been no contact with plaintiff for over 120 days. She next returned to the facility in the year 2000 stating she was having difficulty carrying out activities of daily living. She complained

1  of poor concentration and was concerned about her ability to look for and find a job. She was told
2  that in order to get Supplemental Security Income benefits, she would have to "build a case" for
3  those benefits. Plaintiff was reported as depressed over not seeing her son. Plaintiff was seen
4  once a month in the first part of 2001. After March, 2001, she failed to keep most of her
5  scheduled appointments. She came to the clinic in September, 2001, to discuss legal aid issues,
6  and was not seen again until May, 2002, for a medication refill. She indicated that the medication
7  was making her feel calm and helping her sleep better; she was more alert and able to attend the
8  classes in which she was enrolled. [AR at 368-69.]

### B.  TREATING MENTAL HEALTH PROFESSIONALS' OPINIONS

Plaintiff contends that the ALJ did not address the treatment notes from West Central with any specificity, despite this Court's previous conclusions that the prior ALJ had failed to properly consider and address those notes in the first decision. Joint Stipulation ("Joint Stip.") at 5. In particular, plaintiff asserts that the ALJ based his RFC assessment on the non-examining medical expert who testified at the hearing. Id. Plaintiff further argues that the assessments from West Central that plaintiff had GAF scores ranging from 25 to 38 "are inconsistent with the ability to perform work in a competitive environment," and that the treatment notes, though sporadic after her initial evaluation, and while showing some "waxing and waning of symptoms over time," show little improvement in her condition over a 6 year period. Joint Stip. at 7.

It is well established in this Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830; Baxter

v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  Where the treating physician's opinion is controverted by the opinion of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.  Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).  "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'"  Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

Here, although the ALJ included a thorough summary of the West Central records in his opinion, the Court concludes that it was error for the ALJ to rely on the expert testimony of Dr. Kivowitz to the exclusion of the opinions of the treating mental health professionals at West Central without stating his interpretation of the conflicting evidence and making specific findings. Instead, the ALJ merely regurgitated the evidence, and then reached a conclusion.  Further, even if the ALJ had stated that the opinions given at West Central are contrary to the rest of the evidence, this would not have sufficed.  See, e.g., Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." (footnote omitted)). Indeed, in relying on Dr. Kivowitz's testimony to arrive at the "not disabled" finding, it appears to

the Court that the ALJ misinterpreted Dr. Kivowitz's testimony concerning the West Central GAF scores. The ALJ concluded that Dr. Kivowitz opined that the GAF score of 25 "was not supported by any medical evidence." [AR at 369.] Defendant then argues that Dr. Kivowitz testified that the GAF scores of 25 and 38 "were inconsistent with contemporaneous progress notes." Joint Stip. at 9. Contrary to these assertions, Dr. Kivowitz testified that the GAF score of 25 "is supported by its record . . . [He] read all the progress notes and some of the progress notes go along with that to some extent and many don't." [AR at 433.] He further testified that while certain notes do not support a GAF of 25, "other progress notes note problems," and that the score was a "reasonable opinion as to plaintiff's initial assessment." [AR at 433.] The same holds true for the GAF score of 38. [AR at 434.] This apparent misinterpretation by the ALJ -- or perhaps the ALJ's selective inclusion of only evidence that supports his conclusion -- cannot be considered harmless. GAF scores of 25 and 38 are not indicative of only mild or even moderate symptoms, but rather show major impairments or even a complete inability to function in all areas. While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. § 50746-01 (Aug. 21, 2000)), the Court is aware of no authority asserting that the GAF score and its implications may be rejected without evaluation. Even if the scores are not directly translatable into Social Security terminology, the scores are still probative of plaintiff's condition. See, e.g., Escardille v. Barnhart, 2003 WL 21499999, *5-6 (E.D. Pa. June 24, 2003) (remanding based in part on ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment.").

Neither does the ALJ in apparently rejecting the West Central reports account for the subjective assessment of plaintiff's treating professionals. "The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations. Accordingly, the ultimate conclusions of these physicians must be given substantial weight." Embrey, 849 F.2d at 422. This makes sense as "treating physicians . . . bring a 'unique perspective to the medical evidence'. . . . The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they

provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 833, citing 20 C.F.R. § 404.1527(d)(2).  This is especially true where the treating professionals reached their conclusions based at least in part on observations of plaintiff during her treatment sessions; Dr. Kivowitz had no such sessions with plaintiff.  As there is no thorough summary of the conflicting evidence, or any specific explanation why the ALJ chose the conclusions of the testifying expert over those of the treating physicians, remand on this issue is warranted.

## C. PLAINTIFF'S CREDIBILITY

In denying benefits, and finding that plaintiff can perform a significant range of heavy work, the ALJ concluded that plaintiff's allegations concerning her impairments were "not totally credible for the reasons set forth in the body of the decision." [AR at 372.] Plaintiff argues that the ALJ gave no clear and convincing reason to reject her subjective symptom testimony; defendant contends that the ALJ's credibility analysis was "sufficiently specific" to allow the Court to conclude that the ALJ did not arbitrarily discredit her testimony.  Joint Stip. at 11-12.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839

F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As noted, the ALJ, in the "Findings" section of his decision, concluded that plaintiff's allegations regarding her limitations were "not totally credible for the reasons set forth in the body of the decision." [AR at 372.] The body of the decision makes no specific reference to plaintiff's credibility, however.[6] While the ALJ summarized the evidence in the record concerning plaintiff's mental impairment, and while that evidence might provide a basis for rejecting plaintiff's credibility, the Court is left to speculate as to the actual reason(s) the ALJ did not find plaintiff totally credible. Although an ALJ may properly rely on such things as contradictions between a plaintiff's reported limitations and her daily activities, or inconsistencies in a plaintiff's testimony, or lack of treatment, the ALJ's findings must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected a plaintiff's testimony on permissible grounds, not arbitrarily. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The reasons given by defendant in the Joint Stipulation supporting the ALJ's credibility determination are not adequate, moreover, as the Court's review is limited to the reasons actually cited by the ALJ in support of his determination. Ceguerra v. Secretary of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). As no reasons were specified here to reject plaintiff's credibility, remand is warranted.

/

---

[6] In the first decision, issued on August 8, 2002, the previous ALJ rejected plaintiff's statements concerning her impairments and their impact on her ability to work in light of plaintiff's description of her activities and life style and the reports of physicians and their findings. [AR at 22.] The current ALJ incorporated that decision into his decision. [AR at 368.] As noted in the prior remand, the previous ALJ did not fully evaluate the West Central records in making his determinations, which included the credibility determination. Thus, the Court concludes that the reasons given in the first decision to reject plaintiff's credibility do not suffice to meet the clear and convincing standard as to the second decision.

11

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to determine if specific and legitimate reasons exist to disregard the opinions of the treating mental health professionals at West Center, and if clear and convincing reasons exist to disregard plaintiff's allegations of limitations. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED:  September 19, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE